# COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Callins and Frucci
Argued at Salem, Virginia

ISAAC RAMIREZ RODRIGUEZ

MEMORANDUM OPINION[*] BY
v.      Record No. 1911-23-3      JUDGE CLIFFORD L. ATHEY, JR.
JANUARY 14, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

James C. Martin (Martin & Martin Law Firm, on brief), for
appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Following a jury trial held in the Circuit Court of Pittsylvania County ("trial court") in May

of 2023, Isaac Ramirez Rodriguez ("Rodriguez") was convicted of rape, aggravated sexual battery,

three counts of object sexual penetration, and contributing to the delinquency of a minor. Rodriguez

was sentenced to two life terms plus 115 years and 12 months with 55 years suspended. On appeal,

Rodriguez first challenges the sufficiency of the evidence to sustain his convictions for rape and

object sexual penetration. He also assigns error to the trial court for ruling that a witness for the

Commonwealth was qualified to testify as an expert. He further assigns error to the trial court for

denying his motion to reopen the evidence as well as for denying his post-trial motions to dismiss.

Finally, Rodriguez contends that the trial court erred by imposing life sentences that are

unconstitutionally disproportionate to the crimes for which he was convicted, thus constituting cruel

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

and unusual punishment. Finding no error, we affirm his convictions but remand the matter to the trial court for correction of a clerical error in the sentencing order.[1]

## I. BACKGROUND[2]

A.R.,[3] who was seventeen at the time of the trial, consistently identified Rodriguez as her father.[4] A.R.'s younger brother and sister were twelve and fourteen, respectively, at the time of trial. Isabel Ruiz-Hernandez ("Ruiz-Hernandez"), A.R.'s mother, indicated that Rodriguez was the father of three of her children.[5]

At trial, A.R. testified that when she was eight years old, Rodriguez first touched her breasts and body while warning her not to tell her mother, Ruiz-Hernandez. When A.R. was twelve, Ruiz-Hernandez told A.R. that she "had . . . a feeling that something was going on" and A.R. told Ruiz-Hernandez about Rodriguez touching her. After A.R. reported the abuse to her mother, Rodriguez left their home for a time. Upon his return, however, the same abusive conduct continued to occur. When A.R. told her mother about the abuse again, Ruiz-Hernandez accused A.R. of lying and failed to do anything to stop the abuse.

---

[1] The sentencing summary in that order reversed the recitation of Rodriguez's suspended sentence and the active sentence he must serve. *See* Code § 8.01-428(B).

[2] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc).

[3] We use A.R.'s initials to protect her privacy.

[4] In cross-examining A.R., defense counsel repeatedly referred to Rodriguez as her father or her dad.

[5] Ruiz-Hernandez clarified that she also had a daughter from a prior relationship and Rodriguez was not her father; this daughter was older than A.R.

A.R. testified that as she got older, Rodriguez began rubbing her inner thigh and "try[ing] to get in [her] pants." A.R. stated that Rodriguez would part the lips of her vagina and then place his fingers inside her vagina. She subsequently confirmed that this particular scenario involving Rodriguez's fingers entering her vagina occurred multiple times (approximately once a week) from when she was about twelve years old until she was approximately sixteen.

A.R. also testified that during the summer after she turned twelve, Rodriguez got into bed with her while she was watching television. While they were both lying on the bed, he touched her inner thighs and around her vagina. She testified that she "froze" and felt she could do nothing to resist him. Rodriguez then showed her a condom and placed it on his penis before pushing his penis into her vagina, although he "didn't put it all the way in."[6] However, A.R. did state that she felt Rodriguez's penis in between the lips of her vagina. Afterward, Rodriguez told A.R. that there would be no consequences because he used a condom and not to tell her mother. A.R. testified that because Ruiz-Hernandez had previously accused A.R. of lying and taken no action to prevent the abuse, she did not tell her mother about this incident.

A.R. further testified that she began avoiding wearing certain clothing because she knew that Rodriguez would comment on her appearance and subsequently attempt to touch her inappropriately. When she was in the tenth grade, A.R. recalled sometimes calling her boyfriend when she was home alone with Rodriguez so that Rodriguez would refrain from touching her during the call. A.R. also testified that she confided in her boyfriend about the abuse and although he encouraged her to report the abuse, out of fear, she chose not to do so, commenting that she felt she had a "knot in [her] throat." Rodriguez's abusive behavior continued until A.R. was approximately sixteen years old.

---

[6] On cross-examination, A.R. referred to this as "the condom incident" and said it was one of the "worst thing[s]" that Rodriguez had done to her.

A.R. next testified that in October of 2021, she began working at a restaurant and relied upon her parents for transportation to and from her job. One night, Rodriguez picked her up from work in his truck and A.R. asked to drive home, thinking that he would not touch her inappropriately if she was driving. Instead, Rodriguez put his hand between A.R.'s legs near her vagina while she was driving. When they arrived home, A.R. was angry and went directly to her room. A.R.'s mother asked Rodriguez why A.R. was angry, but he only replied that he did not know why.

When the family went out for a meal at a restaurant the next day, Rodriguez got angry with A.R. because of her attitude. A.R. responded, "[D]o you want me to tell mama what you were doing last night in the truck?" Rodriguez looked "shocked" but did not respond. When Ruiz-Hernandez asked what A.R. was referring to she said, "[Y]ou already know what he did." A.R. subsequently refused her mother's direction to text Rodriguez about the arrival of a camera the family had ordered. When Ruiz-Hernandez confronted her about her refusal, A.R. said, "I don't even look at him as a dad anymore because of . . . the things he does to me and you know it."

In November of 2021, A.R. was given a class assignment to write a "free rant" in her journal on any subject she chose. A.R. wrote that she and Rodriguez were not speaking because he "touches" her. She also wrote in her journal that an argument with Rodriguez turned physical with him punching her and wrestling with her. She also wrote in the journal that she had previously told her mother that if she "ended up pregnant by him it was going to be her fault." A.R.'s teacher read the journal entry, wrote a supportive response, and asked if Rodriguez had raped her. A.R. wrote that he "tried to" many times and the "touching thing" started when she was eight.[7]

---

[7] At trial, A.R. explained that at the time of the writing and her forensic interview, she thought that rape required the victim to be bleeding and bruised after the incident.

A.R.'s teacher reported to the school administration what A.R. had written about Rodriguez, and they contacted the Pittsylvania County Department of Social Services. While investigating the report, Investigator N.W. Spencer ("Investigator Spencer") and Michelle Sandifer testified that they went to A.R.'s home to speak with her. They noted that A.R. appeared very afraid while being questioned. A.R. testified that she did not reveal Rodriguez's abuse at that time because she feared her mother's reaction. In fact, Ruiz-Hernandez was angry when she got home from work and found the investigators in the home. Ruiz-Hernandez commented that if A.R. "wanted to play" then "let's play." When the investigators did question Ruiz-Hernandez, she stated that she did not believe A.R.'s allegation that Rodriguez touched A.R. inappropriately.

At trial, Investigator Spencer testified that when Rodriguez arrived home, he asked him about a "complaint of inappropriate touching from his daughter." Rather than asking which of his daughters made the complaint, Rodriguez commented that he was just touching her on the leg while teaching her to drive and directing the travel route. Law enforcement immediately arrested Rodriguez.

Following Rodriguez's arrest, A.R. wrote in her journal that her mother was mad that she "opened [her] mouth" and demanded that A.R. change her story because Rodriguez was the person who paid the bills and would be deported. A.R. refused to recant. After that, her mother refused to speak to her or give her food.

Taylor Gunter ("Gunter"), the director of the Southern Virginia Child Advocacy Center, conducted a forensic interview of A.R. A copy of Gunter's resume was included in the trial record, which showed that she had bachelor's and master's degrees in criminal justice and had conducted more than 569 forensic interviews with children. She also was a former police officer, had attended over a dozen trainings focused on child sexual abuse, and was currently employed as an adjunct professor of criminal justice at Ferrum College. Gunter had also been trained in both the

"Child First" and the "National Children's Advocacy Center" protocols for interviewing children. She testified that at the beginning of the interview A.R. was quiet and reserved. When Gunter asked A.R. about the specific details of the allegation, she "completely froze up." When asked during the interview, A.R. said that Rodriguez's penis was "on top" of her vagina, but did not go "all the way in." A.R. said she "felt his penis where you put it in." Gunter opined that it was typical for child victims of sexual abuse to delay in disclosing such conduct. Rodriguez objected to Gunter's qualifications as an expert, which the attorney for the Commonwealth and Rodriguez agreed was a continuing objection. Rodriguez also challenged Gunter's qualifications in his renewed motion to strike, arguing that her testimony should not have been received as that of an expert because "[s]he doesn't know what she's talking about."

When A.R. arrived home with Investigator Spencer after the forensic interview, the house was locked, and A.R.'s mother had taken her key. By the time of trial, A.R. no longer lived with her mother and siblings but resided with Rodriguez's aunt. Ruiz-Hernandez no longer permitted A.R. to contact her younger siblings. In spite of the actions of her mother, A.R. refused to retract her allegations against Rodriguez because she "didn't want to lie" and wanted the abuse to end. Ruiz-Hernandez even ordered A.R. to write a letter saying "everything was a lie, and that [A.R.] just wanted more freedom as a teenage girl." When asked if her mother's opinion was true, A.R. answered "no." At the conclusion of the Commonwealth's evidence, Rodriguez moved to strike "everything but the aggravated sexual battery and the contributing." He argued that there was insufficient evidence of penetration for the remaining charges to proceed. The court denied his motion.

Rodriguez called Ruiz-Hernandez to testify on his behalf, and she stated that she never saw any evidence of Rodriguez touching A.R. inappropriately. Ruiz-Hernandez also denied demanding that A.R. write a letter suggesting that the allegations were untrue. Ruiz-Hernandez claimed that

she and A.R. had a troubled relationship but that A.R. and her father had an affectionate relationship typical of a father and a daughter. She also claimed that, before the current allegation, A.R. had never reported that Rodriguez touched her inappropriately. A.R.'s younger sister, as well as Ruiz-Hernandez's older daughter, testified that they never saw Rodriguez touch A.R. improperly. Rodriguez also called two friends and a short-term house guest to testify that they observed Rodriguez and A.R. socially and at religious gatherings but did not notice any "controversy" or anything inappropriate between Rodriguez and A.R.

In rebuttal, the Commonwealth recalled three witnesses who refuted Ruiz-Hernandez's testimony. The witnesses testified how A.R. told them that A.R. did in fact tell Ruiz-Hernandez about the abuse, that Ruiz-Hernandez had been aware that A.R. did not want to be affectionate with Rodriguez, and that A.R. was not a difficult child but was doing well in school and was generally well-behaved. At the conclusion of the Commonwealth's rebuttal evidence, Rodriguez again moved to strike the charges, which the trial court denied. Rodriguez did not object to the jury instructions.

After deliberations, the jury found Rodriguez guilty of rape, aggravated sexual battery, three counts of object sexual penetration, and contributing to the delinquency of a minor. Rodriguez filed a motion to set aside the verdicts, arguing that Rodriguez's age was not proven beyond a reasonable doubt and that the matter was not properly submitted to the jury, that the aggravated sexual battery charge should be dismissed because Rodriguez is not A.R.'s father, and that the evidence was insufficient to convict Rodriguez on the rape and object sexual penetration charges. Rodriguez also filed a pre-sentencing motion to declare his mandatory life sentences unconstitutional. The trial court sentenced Rodriguez to two life sentences, plus 115 years and 12 months with 55 years suspended. Rodriguez appealed.

II. ANALYSIS

A. *Standard of Review*

"The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'"[8] *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Furthermore, "[t]he admission of expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion." *Brown v. Corbin*, 244 Va. 528, 531 (1992). A trial court abuses its discretion in

---

[8] Rodriguez urges this Court to apply a different standard of review to his sufficiency claim and to find that his convictions should be reversed because of "compounding improbabilities" in the evidence, as countenanced by an appellate court in Australia. We decline to do so.

admitting testimony of an expert where "it plainly appears that the witness was not qualified." *Kilby v. Commonwealth*, 52 Va. App. 397, 410 (2008) (quoting *Conley v. Commonwealth*, 273 Va. 554, 560 (2007)).

B. *The evidence in the record was sufficient to convict Rodriguez.*

Rodriguez challenges the sufficiency of the evidence to sustain his convictions for rape and object sexual penetration, contending that the Commonwealth failed to prove the element of penetration. We disagree.

Rodriguez was convicted of rape for having sexual intercourse with a victim who was under the age of 13. Code § 18.2-61(a)(iii). "Penetration by a penis of a vagina is an essential element of the crime of rape; proof of penetration, however slight the entry may be, is sufficient." *Johnson v. Commonwealth*, 259 Va. 654, 682 (2000) (quoting *Moore v. Commonwealth*, 254 Va. 184, 186 (1997)). To sustain his convictions for sexual penetration, the Commonwealth was required to prove that he "penetrate[d] the labia majora . . . of a complaining witness[.]" Code § 18.2-67.2(A). Like rape, penetration under Code § 18.2-67.2 "need be only slight." *Jett v. Commonwealth*, 27 Va. App. 759, 763 (1998), *aff'd on reh'g en banc*, 29 Va. App. 190, 194 (1999).

Rodriguez contends that A.R.'s testimony was inconsistent and thus insufficient to establish the element of penetration. But, in convicting Rodriguez, the jury necessarily credited A.R.'s testimony that she felt penetration of her vagina both by Rodriguez's penis and his fingers. "[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). We give deference to these findings "because the fact finder 'has the unique opportunity to observe the demeanor of the witnesses as they testify.'" *Washington v.*

- 9 -

*Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015)).

Even so, Rodriguez contends that A.R.'s testimony was inherently incredible and unworthy of belief. "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)). "The mere fact that a witness may have . . . given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Id.* "This circumstance is appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." *Id.* As long as a witness testifies to facts which, if true, are sufficient to sustain a guilty verdict, "then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility . . . . If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court." *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)).

Virginia law is clear that the jury could convict Rodriguez based solely on A.R.'s testimony because it found her credible and believed her testimony. *See Fisher v. Commonwealth*, 228 Va. 296, 299 (1984). There is no requirement of a corroborating eyewitness because, as the Supreme Court of Virginia has aptly stated, a "requirement of corroboration would cause most sex offenses to go unpunished[,]" given the clandestine nature of such crimes. *Fisher*, 228 Va. at 299.

Rodriguez points to A.R.'s delay in reporting the abuse as indicating that the crimes did not occur. But our cases recognize that a "victim's youth, fright and embarrassment certainly

provide[] the jury with an acceptable explanation for [delayed reporting of sexual assault]." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991); s*ee Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005) (holding that a 12-year-old victim's delayed report due to her fear of the defendant and "shame and embarrassment at what was happening to her" was consistent with human experience); *Love v. Commonwealth*, 18 Va. App. 84 (1994) (holding that a 13-year-old victim's 7-year delay in reporting ongoing sexual abuse did not render her testimony inherently incredible).

Here, Rodriguez began sexually abusing A.R. when she was only eight years old. She told her mother about the inappropriate touching, and her mother sent Rodriguez out of the house. But shortly thereafter, Rodriguez returned and the abuse resumed, continuing until A.R. was sixteen. A.R. testified that when she was twelve, Rodriguez fondled her, put a condom on his penis, and inserted his penis in her vagina, although she said he did not put it all the way inside. Rodriguez commented that no negative consequences would follow because he had used a condom. Rodriguez told A.R. not to report the conduct to her mother. In multiple discrete incidents that followed, Rodriguez used his fingers to penetrate A.R.'s vagina. A.R.'s reluctance to disclose the abuse was attributable to her fear of her parents and her mother's insistence that A.R. was a liar. A.R. became angry when Rodriguez groped her as she drove home from work and, the next day, asserted that Ruiz-Hernandez knew about the sexual abuse but had done nothing about it. Finally, A.R. confided in writing to a teacher about Rodriguez's actions. After Rodriguez was arrested, Ruiz-Hernandez was unsupportive of A.R. and demanded that she retract the allegations, but A.R. refused because she did not want to lie and wished the abuse to stop. Considering all the facts and circumstances, a reasonable trier of fact could conclude that Rodriguez penetrated A.R.'s vagina with his penis and fingers and that he was guilty beyond a reasonable doubt of rape and sexual penetration with an object.

C. *The trial court did not abuse its discretion in finding that Gunter was qualified to give expert testimony.*

Rodriguez contends that the trial court erred in finding that Gunter was qualified to testify as an expert witness.[9] We disagree.

To qualify as an expert, a witness "needs only to have a degree of knowledge of a subject matter beyond that of persons of common intelligence and ordinary experience so that the witness' opinion will have value in assisting the trier of fact in understanding the evidence or determining a fact in issue." *Kilby*, 52 Va. App. at 410 (quoting *Conley*, 273 Va. at 560); *see also* Va. R. Evid. 2:702(a)(ii). "An expert witness may acquire the requisite knowledge of a subject matter through experience and observation in a variety of ways, including participation in a vocation, without formal training or education." *Kilby*, 52 Va. App. at 410 (quoting *Conley*, 273 Va. at 560).

Here, at the time of Rodriguez's trial, Gunter, who was the director of the Child Advocacy Center that served several counties in southwestern Virginia, had conducted more than 569 forensic interviews involving children in her work. Contrary to Rodriguez's assertion that Gunter held "no special knowledge," Gunter's resume showed that she held bachelor's and master's degrees in criminal justice, served as an adjunct professor of criminal justice at Ferrum

---

[9] Rodriguez asserts on appeal that Gunter also was "extremely biased and was inherently unworthy of belief." He did not raise these objections when the trial court found that Gunter qualified as an expert witness. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). Because Rodriguez did not raise these arguments in a timely manner, he did not preserve them for appellate review. Rodriguez does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and this Court will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Accordingly, Rule 5A:18 bars our consideration of this aspect of Rodriguez's argument on appeal.

College, and had attended over a dozen trainings focused on child sexual abuse. Gunter had been trained in both the "Child First" and the "National Children's Advocacy Center" protocols for interviewing children. Noting Gunter's education and breadth of experience, the trial court rejected Rodriguez's objection that she was unqualified and permitted her to testify as an expert in the field of forensic interviewing of children. Upon the record before us, we thus find no abuse of discretion in the trial court's decision to permit Gunter to testify as an expert.

D. *The trial court did not err in denying Rodriguez's motion to set aside the verdict.*

Rodriguez maintains that the trial court should have set aside the verdict because the Commonwealth failed to prove his age, as required for his convictions for rape, contributing to the delinquency of a minor, and one of the convictions for sexual penetration with an object. He also contends that the trial court erred in refusing to accept evidence in support of his motion to set aside the verdict that tended to disprove he was A.R.'s father, as required for his conviction for aggravated sexual battery. We reject these arguments.[10]

1. Rodriguez's age was proved by circumstantial evidence.

In a motion to set aside the verdict, Rodriguez alleged that there was no direct evidence of his age, as required for his convictions for rape, contributing to the delinquency of a minor, and one charge of sexual penetration with an object. The trial court rejected this claim and denied Rodriguez's motion, finding that circumstantial evidence sufficiently proved that Rodriguez was 18 years old or older at the time of the offenses.

---

[10] We do not consider Rodriguez's claim that some of the charges were improperly presented to the jury through verdict forms that did not require a finding that he was 18 or older. At trial, Rodriguez expressly agreed to the jury instructions and verdict forms. "It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." *Bryant v. Commonwealth*, 295 Va. 302, 307 (2018) (quoting *Online Res. Corp. v. Lawlor*, 285 Va. 40, 60-61 (2013)).

In *Stith v. Commonwealth*, 65 Va. App. 27, 28 (2015), the defendant challenged the sufficiency of the evidence to establish that he was at least 16 years old to sustain his conviction for unlawfully wearing a mask under Code § 18.2-422. At trial, there was no evidence of the defendant's age. *Id.* at 29. On appeal, this Court reiterated the applicable rule:

> [W]hen proof is required that a person is above or below a given age, physical appearance may be considered as proof of that fact. If a criminal defendant's physical appearance indicates an age well above that required to be proven and the *trial court determines that the fact finder is able to conclude beyond a reasonable doubt from the defendant's physical appearance that he exceeds the age required to be proven*, then the defendant's physical appearance alone is sufficient evidence of his age, *and the fact finder may resolve that issue based only on the defendant's physical appearance*.

*Id.* at 32 (alteration in original) (quoting *Jewell v. Commonwealth,* 8 Va. App. 353, 356 (1989)).

Here, the trial court clearly determined that there was enough evidence for the jury to conclude that Rodriguez was over the age of 18 based upon his appearance. The trial court stated, "In taking a look at it here, there is ample evidence [the c]ourt finds from the witness's testimony, the exhibits in evidence, and the physical appearance of the defendant . . . that on each of the charges that is set forth that he was well above the age of eighteen." Accordingly, we find that because the jury's verdicts were not plainly wrong or without evidence to support them, the trial court did not err in denying Rodriguez's motion to set aside the verdict as to the defendant's age.

   2. Rodriguez had the evidence pertaining to A.R.'s paternity before trial but
      chose not to introduce it.

With his motion to set aside the verdict, Rodriguez proffered a juvenile and domestic relations district court order and paternity test stating that he was not A.R.'s biological father. His motion asserted that the trial court should dismiss the aggravated sexual battery conviction because paternity was an element of the offense as charged in the indictment. *See* Code

- 14 -

§ 18.2-67.3(A)(3). At the hearing on his motion, Rodriguez admitted that he knew of the evidence before trial, but he chose not to introduce it for tactical reasons. Noting that Rodriguez himself introduced evidence at trial that he was A.R.'s father and any evidence to the contrary was not newly discovered, the trial court refused to accept the evidence and denied the motion to set aside the verdict.

A new trial may be granted based upon evidence that was not introduced and considered by the finder of fact if "(1) the evidence was discovered after trial; (2) it could not have been obtained prior to trial through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative or collateral; and (4) is material, and as such, should produce an opposite result on the merits at another trial." *Johnson v. Commonwealth*, 41 Va. App. 37, 43 (2003) (quoting *Mundy v. Commonwealth*, 11 Va. App. 461, 480, *aff'd on reh'g en banc*, 399 S.E.2d 29 (1990)). "The burden is on the moving party to show that all four of these requirements have been met in order to justify a new trial." *Id.*

Here, Rodriguez admitted he knew about the evidence of paternity at trial but decided against introducing it. Thus, the evidence disputing his paternity could not have served as a basis for a new trial as newly discovered evidence.

"Whether to reopen a case lies within the sound discretion of the trial judge." *Minor v. Commonwealth*, 16 Va. App. 803, 805 (1993).

> When all the testimony in the trial of a case has been concluded and the witnesses for the respective parties have been excused from their attendance upon court, whether the court will allow the introduction of other testimony is a question addressed to the sound discretion of the trial judge, ". . . and unless it affirmatively appears that this discretion has been abused this court will not disturb the trial court's ruling thereon."

*Id.* (alteration in original) (quoting *Mundy v. Commonwealth*, 161 Va. 1049, 1064 (1933)). We find no abuse of discretion in the trial court's refusal to reopen the evidence to permit Rodriguez

- 15 -

to dispute the issue of paternity—using evidence he knew about before trial—long after the jury convicted him.

    E. *The trial court did not err in imposing mandatory life sentences for Rodriguez's offenses.*

Rodriguez contends that the trial court erred in imposing mandatory life sentences for his convictions of rape and one count of sexual penetration with an object. He maintains that the sentences are unconstitutionally disproportionate to the crimes and constitute cruel and unusual punishment in violation of the Eighth Amendment.[11] We disagree.

Virginia law requires a mandatory life sentence when a rape or object sexual penetration involves a child under the age of 13 and a perpetrator who is 18 years of age or older. *See* Code §§ 18.2-61(B)(2), -67.2(B)(2). In *Commonwealth v. Smith*, 303 Va. 34, 56, 59 (2024), the Supreme Court of Virginia rejected the same argument advanced by Rodriguez and found that a life sentence for an adult defendant who committed rape upon a child under the age of 13 was neither disproportionate to the offense nor cruel and unusual punishment. We are bound by the holding in *Smith* and find no reason to deviate from it concerning his life sentence for sexual object penetration of a child under the age of 13. Thus, we find no error in the trial court's imposition of two mandatory life sentences for two of his convictions.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. Nonetheless, we remand the case to the trial court for the limited purpose of correcting the clerical error in the sentencing order.

*Affirmed and remanded.*

---

[11] We similarly decline to apply Rodriguez's appeals to international authority on this issue as we did previously. *See supra* note 8.